

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00243-CR

———————————————

JUAN CARLOS GONZALEZQUILES, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1747600

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Juan Carlos Gonzalezquiles was convicted by a jury of continuously sexually abusing a child younger than fourteen years of age, *see* Tex. Penal Code Ann. § 21.02(b), and was sentenced to life in prison without parole. On appeal, Gonzalezquiles contends in a single issue that his trial counsel overrode his Sixth Amendment right to autonomy—in contravention of *McCoy v. Louisiana*, 584 U.S. 414, 138 S. Ct. 1500 (2018)—by conceding Gonzalezquiles's guilt during his opening statement to the jury. We will affirm.

## II. BACKGROUND

When Regina[1] was approximately five years old, her Mother met Gonzalezquiles through a dating app. After Mother became pregnant with Gonzalezquiles's child, Gonzalezquiles moved into a house with Mother; her parents; and her two children, including Regina.

When Regina was in the first grade, Gonzalezquiles began sexually abusing her. When Regina was in the second grade, Mother recognized that something "d[id]n't feel right" and asked Regina if Gonzalezquiles had touched her inappropriately. Regina confirmed that he had. Mother confronted Gonzalezquiles, who admitted to

---

[1]Because the victim was a minor at the time of the offense, we refer to her by a pseudonym, and we refer to the victim's family members by their relationship to her. *See* Tex. R. App. P. 9.10(a)(3), (b).

the abuse, asked for forgiveness, and promised that it would never happen again. For the sake of her baby son with Gonzalezquiles, Mother decided to "give him another chance."

But despite Gonzalezquiles's promise to end the abuse, it continued until Regina was in the fourth grade. Mother often asked Regina whether Gonzalezquiles was still abusing her, but Regina, trying to protect her little brothers, assured her that nothing inappropriate was happening.

When Regina was thirteen or fourteen years old, Mother could see the signs of trauma in her, but she assumed that it was the ongoing effects of the abuse that had been revealed when Regina was in the second grade. Mother took Regina to see a therapist, and Regina told the therapist about the full extent of the abuse. Shortly thereafter, Regina also spoke about the abuse with a Child Protective Services investigator, a doctor, a sexual assault nurse examiner (SANE), and law enforcement.

Eventually, a forensic interview was conducted. Regina told the forensic interviewer that Gonzalezquiles had sexually abused her from the first grade to the fourth grade and described the various acts of abuse.

Grand Prairie Police Department Detective Marcos Bonilla observed the forensic interview and arranged to interview Gonzalezquiles shortly thereafter. During the interview, Gonzalezquiles told Detective Bonilla that Regina enjoyed performing oral sex on him and stated that he had never forced her to do anything.

3

He also said that he regretted the abuse "very much" and characterized it as something that had "happened a long time ago."

Shortly after this interview, Gonzalezquiles was arrested and charged with, inter alia, the continuous sexual abuse of a child under the age of fourteen.[2] *See* Tex. Penal Code Ann. § 21.02(b). Following a jury trial, Gonzalezquiles was convicted and sentenced to life in prison without parole. He filed a motion for new trial, which was denied by operation of law. This appeal followed.

## III. DISCUSSION

### A. Gonzalezquiles's *McCoy* Complaint

In his sole appellate issue, Gonzalezquiles contends that his trial counsel overrode his Sixth Amendment right to autonomy—in contravention of *McCoy*—by conceding Gonzalezquiles's guilt during his opening statement to the jury. We disagree.

#### 1. Applicable Law

In *McCoy*, the United States Supreme Court reversed the defendant's conviction for capital murder and remanded the case to the trial court when the defendant's trial

---

[2]Gonzalezquiles was also charged with one count of aggravated sexual assault of a child and two counts of indecency with a child by sexual contact. *See* Tex. Penal Code Ann. §§ 21.11(a)(1), 22.021(a)(1)(B), (2)(B). But because the jury convicted Gonzalezquiles of continuous sexual abuse of a child, it did not reach the remaining counts. *See Allen v. State*, 620 S.W.3d 915, 919–22 (Tex. Crim. App. 2021) (holding that the continuous-sexual-abuse statute prohibits a defendant's additional conviction of a predicate offense that "occurred [in]side the period in which the [continuous-sexual-abuse offense] was committed"); *see also* Tex. Penal Code Ann. § 21.02(e).

counsel conceded the defendant's guilt over his clear objections to the contrary. 584 U.S. at 428, 138 S. Ct. at 1512. The Supreme Court held that "[w]hen a client expressly asserts that the objective of 'his defen[s]e' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." *Id.* at 423, 138 S. Ct. at 1509 (emphasis removed). It further held that counsel's admission of a client's guilt over the client's express objection is structural error. *Id.* at 427, 138 S. Ct. at 1511.

As to the preservation of a *McCoy* complaint, the Texas Court of Criminal Appeals has stated that "a defendant cannot simply remain silent before and during trial and raise a *McCoy* complaint for the first time after trial." *Turner v. State*, 570 S.W.3d 250, 276 (Tex. Crim. App. 2018). The court noted that a defendant faced with a *McCoy* issue should not be expected to object with the precision of an attorney, holding that a defendant makes a *McCoy* complaint with "sufficient clarity when he presents 'express statements of [his] will to maintain innocence.'" *Id.* (quoting *McCoy*, 584 U.S. at 424, 138 S. Ct. at 1509).

## 2. The Complained-Of Concession by Gonzalezquiles's Trial Counsel

Gonzalezquiles bases his *McCoy* complaint on the following remarks from his trial counsel, which comprised the entirety of counsel's opening statement to the jury:

> Ladies and gentlemen, we just ask you to listen to all the evidence. You're going to hear a lot of evidence. The State has already given you an outline of that, but I want you to pay attention to the fact that this thing stopped a long time ago. This man was repentant. He changed.

5

This happened a long time ago. I want you to keep that in mind. You'll hear that.

That's all I have, Your Honor. Thank you.

By acknowledging that "[t]his happened" but "stopped a long time ago" and emphasizing that Gonzalezquiles was "repentant," Gonzalezquiles's trial counsel, in effect, conceded that the alleged abuse had occurred. Although Gonzalezquiles never objected to—or otherwise expressed any dissatisfaction with—his trial counsel's opening statement at trial, he now asserts that he always maintained his innocence and never agreed to this strategic concession of guilt.

### 3. Analysis

The State argues that Gonzalezquiles has failed to preserve his *McCoy* complaint. But as the State acknowledges, the question of whether a *McCoy* claim has been preserved is closely intertwined with the merits of the claim. *See Horner v. State*, No. 02-21-00167-CR, 2023 WL 5766026, at *3 (Tex. App.—Fort Worth Sept. 7, 2023, pet. ref'd) (mem. op., not designated for publication) (citing *Turner*, 570 S.W.3d at 276). And having reviewed the record, we conclude that Gonzalezquiles's *McCoy* complaint is both unpreserved and meritless.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party

6

must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020).

Here, Gonzalezquiles complains about comments made by his trial counsel during his opening statement. But Gonzalezquiles never raised any objection or complaint to the trial court regarding these statements. And while Gonzalezquiles filed a motion for new trial, it made no reference to the *McCoy* complaint that he now raises on appeal.[3]

Gonzalezquiles asserts that he preserved his *McCoy* complaint by filing a pretrial pro se "declaration of conflict" and motion for substitution of counsel with the trial court. In that pretrial filing, he expressed, among other things, that his trial counsel "show[ed] no willingness[,] desire, [or] interest to . . . advocate on" his behalf; "display[ed] a hurry-up[-]and[-]get[-]him[-]convicted attitude"; had become an "instrument of oppression" and "adversary" towards him; and had been "trying to forcefully scare [him] to plea bargain for 30 years to a crime he is innocent of," a tactic that Gonzalezquiles likened to "bombarding an innocent man with guilty man offers." But Gonzalezquiles never sought a ruling on this pretrial motion, and even if he had,

---

[3]In his motion for new trial, Gonzalezquiles argued in very general terms that his "verdict and sentence . . . [were] contrary to the law and the evidence," that his sentence was "excessive" and constituted "cruel and unusual punishment," and that the "indictment . . . was fundamentally defective." The motion did not reference his trial counsel's opening statement at all, much less raise a *McCoy* complaint based thereon.

such a pretrial motion is generally insufficient to preserve a claim of trial error. *See Mendoza v. State*, 552 S.W.2d 444, 450 (Tex. Crim. App. 1977). Further, even if such a pretrial filing were a proper vehicle for preserving a *McCoy* complaint, the filing relied upon by Gonzalezquiles showed only that he maintained his innocence and that his trial counsel had attempted to persuade him to take a plea deal; it did not address trial strategy at all, much less show that he had told his counsel to pursue a defense of asserting innocence that his counsel then overrode. *See Bluntson v. State*, No. AP-77,067, 2025 WL 1322702, at *30 (Tex. Crim. App. May 7, 2025) (rejecting appellant's *McCoy* complaint because, unlike in *McCoy*, the record did not "clearly establish[] that trial counsel acted contrary to the client's express wishes"); *Ex parte Barbee*, 616 S.W.3d 836, 846 (Tex. Crim. App. 2021) (Walker, J., concurring) (agreeing that applicant's habeas petition on *McCoy* grounds should be rejected because the "evidence in the habeas record show[ed] that [the applicant had] told counsel repeatedly that he was innocent" but did "not show that he [had] told counsel to pursue a defense of asserting innocence that counsel then overrode"). Indeed, considering that the relied-upon pretrial motion was filed nearly a year before trial, we note that even if it had shown that a trial-objective conflict existed between Gonzalezquiles and his trial counsel at the time the motion was filed, it would not show that this conflict persisted at trial. During the extended period between the

8

filing of the motion and trial, Gonzalezquiles could have easily changed his mind and acquiesced to his trial counsel's strategy of conceding guilt.[4]

In sum, we hold that Gonzalezquiles has not presented a sufficient record to support his *McCoy* complaint. *See Horner*, 2023 WL 5766026, at *3; *Stephenson v. State*, 673 S.W.3d 370, 382 (Tex. App.—Fort Worth 2023, pet. ref'd). Accordingly, we overrule his sole issue.

## IV. CONCLUSION

Having overruled Gonzalezquiles's sole issue, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 24, 2025

---

[4]Indeed, the parallels between Gonzalezquiles's statements during his police interview and his trial counsel's opening statement suggest that, far from overriding Gonzalezquiles's autonomy, his trial counsel was actually abiding by "his defense." *See McCoy*, 584 U.S. at 423, 138 S. Ct. at 1509. As noted, during his police interview, Gonzalezquiles said that he regretted abusing Regina and characterized the abuse as something that had "happened a long time ago." His trial counsel's above-quoted opening statement expressed these same ideas and even used nearly identical phrasing.